CASE NO. 08-CV-01286-VM
(consolidated with Case Nos. 08-CV-01815 and 08-CV-01286)

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

———————————————

COMPANIA INTERNACIONAL FINANCIERA, S.A,
COUDREE GLOBAL EQUITIES FUND,
STANDARD BANK OF LONDON, AND
LEONARDO CAPITAL FUND SPC, ET AL.,

*Appellants,*

v.

CALPINE CORPORATION, ET AL.,

*Debtors-Appellees.*

———————————————

On Appeal from the United States Bankruptcy Court
For the Southern District of New York

*In re Calpine Corporation, et al.,*
Case No. 05-60200 (BRL) (Jointly Administered)

———————————————

## OPENING BRIEF OF DEBTORS-APPELLEES
## IN RESPONSE TO APPELLANTS' OPENING BRIEFS

———————————————

Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted pro hac vice)
David R. Seligman (admitted pro hac vice)
Peter Asplund (PA 0603)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jeffrey S. Powell (admitted pro hac vice)
Ashley C. Parrish (admitted pro hac vice)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Ste. 1200
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Debtors-Appellees Calpine Corporation, et al.*

DATED: March 28, 2008

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

STATEMENT OF THE CASE................................................................................4

STATEMENT OF FACTS ...................................................................................6

      A.      The Disclosure Statement And Solicitation Process.....................................6

      B.      Discovery And Litigation Over Valuation.................................................7

      C.      The Negotiated Settlement And Confirmation Order..............................10

      D.      The Objecting Shareholders' Belated Requests To Re-Litigate ...............12

      E.      This Court's Denial Of The Compania Appellants' Stay Request ............14

      F.      The Plan Of Reorganization Is Substantially Consummated....................15

STANDARD OF REVIEW ...............................................................................16

ARGUMENT ...............................................................................................18

    I.      The Consolidated Appeals Are Equitably Moot And Should Be Dismissed.........18

      A.      The Objecting Shareholders Have Failed To Address The Threshold Mootness Question. ..................................................18

      B.      The Plan Of Reorganization Is Substantially Consummated....................21

      C.      The Objecting Shareholders Cannot Overcome The Strong Presumption That Their Appeals Are Moot................................23

           1.      The Relief Sought By The Objecting Shareholders Is Infeasible And Not Permitted Under Federal Law. ......................23

           2.      The Court Cannot Grant Relief Without Imperiling The Debtors' Successful Reorganization And Unraveling Numerous, Intricate, Integrated Transactions.............................26

           3.      Adversely Affected Parties Have Not Received Notice Or A Reasonable Opportunity To Participate In These Appeals. ..................................................29

           4.      The Objecting Shareholders Did Not Diligently Pursue Or Obtain A Stay Pending Appeal. ....................................30

    II.      The Objecting Shareholders Have Not Made The Threshold Showing Required To Pursue Their Appeals........................................32

      A.      The Objecting Shareholders Lack Standing To Appeal Rulings And Orders Not Challenged In The Proceedings Below. .........................33

1.      The Flair Appellants Lack Standing To Participate In These Appeals. ...........................................................................................34

2.      The Objecting Shareholders Have No Standing To Challenge The Bankruptcy Court's Discovery And Scheduling Orders.......................................................................34

3.      The Objecting Shareholders Have No Standing To Challenge The Bankruptcy Court's Confirmation Order...............35

B.      The Objecting Shareholders Have Not Addressed The Critical Findings On Which The Bankruptcy Court Grounded Its Denial Of Reconsideration..........................................................................36

C.      The Objecting Shareholders Have Not Come Forward With Any Evidence Supporting Their Positions On Appeal. ......................................37

III.    The Objecting Shareholders' Arguments Fail On Their Merits. ..........................41

A.      The Objecting Shareholders' Due Process Rights Were Not Violated.................................................................................41

1.      The Objecting Shareholders Had A Fair And Adequate Opportunity To Participate In The Confirmation Process. ............41

2.      The Minor Plan Modifications Were Not Material.......................43

B.      The Bankruptcy Court Did Not Abuse Its Discretion In Retaining A Court-Appointed Expert.........................................................44

C.      The Bankruptcy Court Examined And Determined All Elements Required Under Section 1129 Of The Bankruptcy Code. .........................46

D.      The Bankruptcy Court Did Not Abuse Its Discretion In Denying Additional Discovery. ..............................................................48

CONCLUSION.............................................................................................50

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Hughes*,
    174 B.R. 884 (S.D.N.Y. 1994).............................................................. 18, 29

*Associated Press v. U.S. Dept. of Def.*,
    395 F. Supp. 2d 17 (S.D.N.Y. 2005)........................................................ 37

*Baker v. Dorfman*,
    239 F.3d 415 (2d Cir. 2000)................................................................... 35

*Bartel v. Bar Harbor Airways, Inc.*,
    196 B.R. 268 (S.D.N.Y. 1996)................................................................ 26

*Brady v. Andrew (In re Commercial W. Fin. Corp.)*,
    761 F.2d 1329 (9th Cir. 1985) ............................................................... 33

*Carney v. U.S. Dept. of Justice*,
    19 F.3d 807 (2d Cir. 1994)..................................................................... 49

*Castleman v. Liquidating Tr.*,
    No. 6:06-CV-1077, 2007 WL 2492792 (N.D.N.Y. Aug. 28, 2007) ................. 35

*Cedar Crest Health Center, Inc. v. Bowen*,
    129 F.R.D. 519 (S.D. Ind. 1989)............................................................. 19

*Church of Scientology of Cal. v. United States*,
    506 U.S. 9 (1992)................................................................................ 18

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985)................................................................... 32

*Cruden v. Bank of N.Y.*,
    957 F.2d 961 (2d Cir. 1992)................................................................... 48

*D.A. Elia Constr. Corp. v. Damon and Morey, LLP*,
    No. 04-CV-975A, 2006 WL 1720361 (W.D.N.Y. 2006) ................................ 33

*Devine v. American Benefit Corp.*,
    27 F. Supp. 2d 669 (S.D. W.Va. 1998)..................................................... 19

*Devlin v. Transportation Commc'ns Int'l. Union*,
    175 F.3d 121 (2d Cir. 1999)............................................................. 17, 36

*Eastway Constr. Corp. v. City of New York*,
 762 F.2d 243 (2d Cir. 1985)..................................................................... 49

*Ernst Haas Studio, Inc. v. Palm Press, Inc.*,
 164 F.3d 110 (2d Cir. 1999)..................................................................... 50

*Goldy v. Beal*,
 91 F.R.D. 451 (D.C. Pa. 1981).................................................................. 49

*Griffin Indus. v. Petrojam, Ltd.*,
 72 F. Supp. 2d 365 (S.D.N.Y. 1999)......................................................... 36

*Gulf Ins. Co. v. Glasbrenner*,
 343 B.R. 47 (S.D.N.Y. 2006).................................................................... 17

*H. K. Porter Co. v. Goodyear Tire & Rubber Co.*,
 536 F.2d 1115 (6th Cir. 1976) ................................................................ 48

*In re Adelphia Commnc's Corp.*,
 367 B.R. 84 (S.D.N.Y. 2007)............................... 19, 25, 26, 27, 29, 30, 31, 32

*In re Adelphia*,
 No. 06-1738, 2006 WL 3826700 (2d Cir. Dec. 26, 2006)........................ 25, 30

*In re Advocate*,
 140 F.2d 783 (2d Cir. 1944)..................................................................... 33

*In re Armstrong World Indus., Inc.*,
 366 B.R. 278 (D. Del. 2007)..................................................................... 44

*In re Blumer*,
 66 B.R. 109, (9th Cir. BAP 1986),
 *aff'd*, 826 F.2d 1069 (9th Cir. 1987)........................................................ 26

*In re Box Bros. Holding Co.*,
 194 B.R. 32 (D. Del. 1996)....................................................................... 30

*In re Chase*,
 No. 06 Civ. 13743, 2008 WL 203622 (S.D.N.Y. Jan. 22, 2008)..................... 17

*In re Chateaugay Corp.*, (*"Chateaugay I"*)
 988 F.2d 322 (2d Cir. 1993)..................................................................... 18

*In re Chateaugay Corp.*, (*"Chateaugay II"*)
 10 F.3d 944 (2d Cir. 1993).............................................................. 23, 26, 30

*In re Chateaugay Corp.*, (*"Chateaugay III"*)
 94 F.3d 772 (2d Cir. 1996)....................................................................... 19

*In re Cinderella Clothing Indus., Inc.*,
    93 B.R. 373 (Bankr. E.D. Pa. 1988) ........................................................ 24

*In re Concrete Designers, Inc.*,
    173 B.R. 354 (Bankr. S.D. Ohio 1994)..................................................... 43

*In re Croton River Club, Inc.*,
    52 F.3d 41 (2d Cir. 1995) .............................................................. 17, 39

*In re Delta*,
    374 B.R. 516 (S.D.N.Y. 2007).......................................... 22, 25, 27, 29

*In re Drexel Burnham Lambert Group, Inc.*,
    138 B.R. 717 (Bankr. S.D.N.Y. 1992)..................................................... 42

*In re East 44th Realty, LLC*,
    07-8799, 2008 WL 217103 (S.D.N.Y. Jan. 23, 2008) ...................................... 29

*In re Edwards*,
    62 F.2d 641 (7th Cir. 1992) .............................................................. 20

*In re Enron Corp.*,
    326 B.R. 497 (S.D.N.Y. 2005).......................................................... 22, 29

*In re Flanagan*,
    503 F.3d 171 (2d Cir. 2007)............................................................... 17

*In re Gucci*,
    126 F.3d 380 (2d Cir. 1997)............................................................... 33

*In re Health Mgmt. Sys. Inc. Secs. Litig.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000)..................................................... 36

*In re Home Holdings, Inc.*,
    No. 98-cv-5690, 2001 WL 262750 (S.D.N.Y. Mar. 16, 2001)........................... 21, 22, 23

*In re Horne*,
    99 B.R. 132 (Bankr. M.D. Ga. 1989)..................................................... 24

*In re Integrated Res., Inc.*,
    147 B.R. 650 (S.D.N.Y. 1992).......................................................... 17, 48

*In re Ionosphere Clubs, Inc.*,
    184 B.R. 648 (S.D.N.Y. 1995).......................................................... 23, 25

*In re Johns Manville Corp.*,
    68 B.R. 155 (S.D.N.Y. 1986)............................................................. 42

*In re Kenwin Shops, Inc.*,
No. 99-10485, 2000 WL 351404 (S.D.N.Y. Apr. 5, 2000) ........................................ 23, 28

*In re King*,
No. 05-51441, 2005 WL 4030049 (Bankr. S.D. Ohio July 15, 2005) ............................. 37

*In re Loral Space & Communications, Ltd.*,
342 B.R. 132 (S.D.N.Y. 2006) ........................................ 20, 23, 25, 26, 27, 30, 31, 32, 38

*In re McKenna*,
238 F.3d 186 (2d Cir. 2001) ........................................................................................ 44

*In re Metromedia Fiber Network, Inc.*,
416 F.3d 136 (2d Cir. 2005) ................................................................ 18, 22, 28, 29, 31

*In re Miner*,
229 B.R. 561 (2d Cir. BAP 1999) ............................................................................... 34

*In re Orlick*,
No. 01-civ1606, 2002 WL 432006 (E.D. Pa. Mar. 19, 2002) ........................................ 48

*In re Peterson*,
253 U.S. 300 (1920) .................................................................................................... 45

*In re Revere Copper & Brass, Inc.*,
78 B.R. 17 (S.D.N.Y. 1987) ................................................................................. 30, 32

*In re Ruti-Sweetwater, Inc.*,
836 F.2d 1263 (10th Cir. 1988) .................................................................................. 37

*In re Schick*,
No. 97 Civ. 9300, 1998 WL 397849 (S.D.N.Y. July 16, 1998) ............................... 35, 39

*In re Sharp*,
361 B.R. 559 (10th Cir. 2007) .................................................................................... 40

*In re Specialty Equip. Cos.*,
3 F.3d 1043 (7th Cir. 1993) ....................................................................................... 28

*In re Texaco Inc.*,
92 B.R. 38 (S.D.N.Y. 1988) ............................................................................. 23, 29, 31

*In re Trico Marine Servs., Inc.*,
337 B.R. 811 (Bankr. S.D.N.Y. 2006) ......................................................................... 30

*In re UAL Corp.*,
408 F.3d 847 (7th Cir. 2005) ...................................................................................... 31

*In re UNR Indus., Inc.,*
  20 F.3d 766 (7th Cir. 1994) ....................................................................... 32

*In re Urban Broad. Corp.,*
  304 B.R. 263 (E.D. Va. 2004) ..................................................................... 37

*In re US Airways Group,*
  369 F.3d 806 (4th Cir. 2004) ...................................................................... 24

*In re USA Commercial Mortgage Co.,*
  Nos. 2:07-CV-00072, 2007 WL 2571947 (D. Nev. Aug. 29, 2007) ................ 20

*In re Warner Commc'ns Sec. Litig.,*
  798 F.2d 35 (2d Cir. 1986)........................................................................... 25

*In re Weston,*
  18 F.3d 860 (10th Cir. 1994) ....................................................................... 33

*In re Worldcom, Inc. Sec. Litig.,*
  No. 02 Civ. 3288, 2007 WL 2994395 (S.D.N.Y. Oct. 16, 2007) ................... 17

*In re Wyatt, Inc.,*
  168 B.R. 520 (Bankr. D. Conn. 1994) .......................................................... 48

*In re Zahn Farms,*
  206 B.R. 643 (2d Cir. BAP 1997)................................................................ 31

*Kane v. Johns-Manville Corp.,*
  843 F.2d 636 (2d Cir. 1988)......................................................................... 33

*Kothe v. Smith,*
  771 F.2d 667 (2d. Cir. 1985)........................................................................ 46

*MAC Panel Co. v. Virginia Panel Corp.,*
  283 F.3d 622 (4th Cir. 2002) ....................................................................... 18

*Majorica, S.A. v. R.H. Macy & Co.,*
  762 F.2d 7 (2d Cir. 1985) ............................................................................ 32

*Mannheim Video, Inc. v. County of Cook,*
  884 F.2d 1043 (7th Cir. 1989) ..................................................................... 19

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary
  Dance, Inc.,*
  466 F.3d 97 (2d Cir. 2006)........................................................................... 40

*Martin v. O'Conner,*
  225 B.R. 283 (N.D.N.Y. 1998)..................................................................... 49

*Matter of Levensaler*,
  13 B.R. 140 (Bankr. Conn. 1981) ................................................. 49

*Matter of Schultz Mfg. Fabricating Co.*,
  956 F.2d 686 (7th Cir. 1992) ..................................................... 33

*Norton v. Sam's Club*,
  145 F.3d 114 (2d Cir. 1998)....................................................... 47

*Ozyagcilar v. Davis*,
  701 F.2d 306 (4th Cir. 1983) ..................................................... 25

*Public Citizen, Inc. v. NHTSA*,
  489 F.3d 1279 (D.C. Cir. 2007) .................................................. 34

*Sandra Cotton, Inc. v. Bank of N.Y.*,
  87 B.R. 272 (W.D.N.Y. 1988) .................................................... 33

*Sault Ste. Marie Tribe of Chippewa Indians v. Engler*,
  146 F.3d 367 (6th Cir. 1998) ..................................................... 37

*Scott v. Spanjer Bros., Inc.*,
  298 F.2d 928 (2d Cir. 1962)....................................................... 45

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995)......................................................... 36

*Troy Savings Bank v. Travelers Motor Inn, Inc.*,
  215 B.R. 485 (N.D.N.Y. 1997) ................................................... 35

*U.S. ex rel. Free v. Peters*,
  826 F. Supp. 1153 (N.D. Ill. 1993) ............................................. 49

*United States v. Ballard*,
  779 F.2d 287 (5th Cir. 1986) ..................................................... 47

*United States v. Pugliese*,
  712 F.2d 1574 (2d Cir. 1983)..................................................... 39

*Zhang v. Gonzales*,
  426 F.3d 540 (2d Cir. 2005)....................................................... 47

## Statutes

11 U.S.C. § 1101(2) ..................................................................... 21

11 U.S.C. § 1127(b) .................................................................... 24

**Rules and Regulations**

17 C.F.R. § 240.14b-1(b)(2) ................................................................................ 11

17 C.F.R. § 240.14b-2(b)(3) ................................................................................ 11

Fed. R. Bankr. P. 3019(a) ................................................................................... 11

Fed. R. Bankr. P. 8005 ........................................................................................ 31

Fed. R. Bankr. P. 8013 ........................................................................................ 17

Fed. R. Evid. 402 ................................................................................................. 39

Fed. R. Evid. 403 ................................................................................................. 39

Fed. R. Evid. 802 ................................................................................................. 39

Fed. R. Evid. 901 ................................................................................................. 39

## INTRODUCTION AND SUMMARY OF ARGUMENT

The appellants in these three consolidated appeals (collectively, the "Objecting Shareholders") are investors who purchased millions of shares of Calpine Corporation common stock *after* Calpine filed its chapter 11 petitions. Despite the size of their collective holdings, the Objecting Shareholders did not retain counsel to monitor the chapter 11 cases. Although they received notice, they did not appear at the disclosure statement hearing, object to the discovery procedures established by the Bankruptcy Court, file an objection to the plan of reorganization, participate in discovery or litigate confirmation, or appear at either the confirmation hearing on December 17 or the continued confirmation hearing on December 19. Nor did they file a notice of appearance so as to receive automatic and immediate electronic mail service of all documents filed with the Bankruptcy Court. Instead, the Objecting Shareholders admit they relied entirely on the Equity Committee to protect their interests.

The Objecting Shareholders are now dissatisfied with the Equity Committee's decision to support the plan of reorganization and with the careful determinations made by the Bankruptcy Court. They want to blow up the plan of reorganization and re-litigate valuation issues that were litigated over the course of months of proceedings in which they declined to participate. In an attempt to justify this extraordinary request, the Objecting Shareholders complain they did not receive adequate notice of supposedly "material" changes made to the plan before it was confirmed, and that the confirmation process was "rushed" and discovery "severely limited."

But it is undisputed that six months ago, on September 26, 2007, the Bankruptcy Court approved the Debtors' disclosure statement, established a schedule for litigating the value of reorganized Calpine, and gave all interested parties an opportunity to participate in the plan confirmation process. The Debtors disclosed to all stakeholders that, based on the Debtors' valuation estimates, equity holders were not guaranteed distributions under the plan, and that the

Bankruptcy Court would ultimately determine the value of reorganized Calpine. It also is undisputed that the Objecting Shareholders received adequate notice of the disclosure statement, the proposed plan, the court-ordered discovery and pre-trial schedule, the confirmation objection deadline, and the date of the confirmation hearing. The Objecting Shareholders nonetheless chose to stay on the sidelines and made no formal appearance in the proceedings until the last week of December 2007 — more than a week *after* the Bankruptcy Court entered a final order confirming the plan of reorganization.

For reasons stated on the record, the Bankruptcy Court rejected the Objecting Shareholders' late-breaking objections as meritless and, in a thorough written opinion, denied their request for a stay pending appeal. *See* 2008-01-24 Order at 4, 11-2 [Dkt No. 7478]; 2008-01-15 Hrg. Tr. at 48-53. The Objecting Shareholders then sought emergency relief from this Court in the form of a "limited stay." While that request remained pending, and because the Objecting Shareholders did not seek expedited consideration of their stay request, the Debtors' plan went effective, bringing about myriad transactions and events, including distributions to shareholders. On February 1, after a lengthy hearing, the Court denied the request for a "limited stay." 2008-02-01 Hrg. Tr. at 65-72; 2008-02-01 Order.

Undeterred, the Objecting Shareholders now urge this Court to unwind Calpine's consummated plan and modify the plan to require the reorganized Debtors to issue and reserve 300 million additional shares. In addition, they want the Court to force reorganized Calpine *back* into chapter 11 by directing the Bankruptcy Court to reopen the confirmation process and require re-litigation of Calpine's value. As explained below, the Court should deny these unfounded requests and dismiss the consolidated appeals.

*First*, the appeals are moot because Calpine's plan of reorganization has been substantially consummated. The reorganized Debtors have implemented the plan of reorganization, transferred property, and made distributions to former creditors and shareholders. Millions of shares and warrants to purchase shares of reorganized Calpine have been distributed and traded on open markets to third party investors. At this late date, the Court cannot grant effective relief and, even if it could fashion some relief, it should decline to do so because interfering with the consummated plan would imperil Calpine's successful reorganization, unravel numerous intricate and integrated transactions, and create an unmanageable mess for the Bankruptcy Court. Furthermore, granting relief would be grossly inequitable to parties who, unlike the Objecting Shareholders, diligently participated in the bankruptcy proceedings, as well as innocent investors who purchased new Calpine common stock and warrants in reliance on the terms of the confirmed plan. The proverbial eggs in this case not only have been beaten to a faretheewell, they have been seasoned, cooked up, and served to thousands of interested stakeholders. At this late, late juncture, unscrambling them simply is not an option. (*See* Section I, below.)

*Second*, the appeals should be dismissed because the Objecting Shareholders have not carried their heavy burden to prove that the Bankruptcy Court abused its discretion in denying their requests for reconsideration. They argue that discovery was "rushed" and "severely limited," but they lack standing to raise these (unfounded) objections because they did not timely challenge the Bankruptcy Court's discovery and scheduling orders in the proceedings below. More fundamentally, the Objecting Shareholders never address the Bankruptcy Court's dispositive findings that, because the Objecting Shareholders "failed to appear and participate in" the "detailed scheduled discovery and confirmation process," and failed to come forward with

concrete evidence supporting their position, they did not justify their request to reopen the confirmation proceedings.  Parties may not use motions for reconsideration to raise arguments that could have and should have been raised before final judgment.  (*See* Section II, below.)

*Third*, the appeals should be dismissed because the arguments raised in the Objecting Shareholders' opening briefs are meritless.  The Objecting Shareholders have made no showing that the Bankruptcy Court's rulings were clearly erroneous or manifestly unjust, and they have identified no substantial grounds for reversing the Bankruptcy Court's confirmation order.  The Objecting Shareholders argue that minor modifications to the plan were material, but they cannot overcome the Bankruptcy Court's findings to the contrary.  Among other things, the Bankruptcy Court found that, because reorganized Calpine was worth $18.95 billion, equity holders were entitled to no distributions under the plan and, therefore, the plan modifications inured to the benefit of equity holders by granting them warrants to which they otherwise would not have been entitled.  *See* 2008-01-24 Order at 4, 11-12 [Dkt No. 7478]; 2008-01-15 Hrg. Tr. at 52.  The Objecting Shareholders' scattershot arguments do not come close to carrying their heavy burden on appeal.

## STATEMENT OF THE CASE

The orders challenged on appeal are the culmination of more than two years of proceedings, beginning on December 20, 2005, when the Debtors filed voluntary petitions for relief under chapter 11.  Those proceedings, involving one of the largest reorganizations in history, concluded in December, when the Bankruptcy Court confirmed a plan of reorganization permitting Calpine to emerge from chapter 11 as a revitalized entity.

Three groups of appellants are participating in these consolidated appeals.  The lead appellants — Compania Internacional Finaciera, S.A., Coudree Global Equities Fund, Standard Bank of London, and Leonardo Capital Fund SPC (the "Compania Appellants") — are

4

sophisticated hedge funds who purchased nearly 28 million shares of Calpine old common stock *after* the Debtors filed their chapter 11 petitions. *See* Compania Br. 1. The second group — David Flair, Avram Ninyo, and Merle Root (the "Flair Appellants") — are individual investors who owned over 3 million shares of Calpine old common stock. *See* Flair Br. 1. The third has one member — Elias Fellus — who is proceeding *pro se* and who owned 44,000 shares of Calpine old common stock, including shares he purchased *after* the Debtors filed their chapter 11 petitions. *See* Felluss Br. 5.

None of the appellants participated in the extensive proceedings that resulted in the global settlement and confirmation of the Debtors' (sixth amended) joint plan of reorganization. In fact, none of the appellants appeared on the scene until days after the Bankruptcy Court confirmed the plan on December 19, 2007. Over a week later, the Compania Appellants (on December 31) and Mr. Felluss (on December 26) moved for reconsideration of the confirmation order and associated rulings, arguing that reorganized Calpine is worth more than the $18.95 billion value determined by the Bankruptcy Court. The Bankruptcy Court denied the motions for reconsideration on January 15, 2008.

The Compania Appellants (but neither Mr. Fellus nor the Flair Appellants) sought a "limited stay" from the Bankruptcy Court. After their request was denied, the Compania Appellants filed an emergency motion in this Court for an expedited appeal and a "limited stay." Although they were on notice that the plan would become effective by the end of the month, *see* 2008-01-15 Hrg. Tr. at 54, the appellants did not seek an immediate hearing or move for expedited briefing.

The plan of reorganization became effective on January 31, 2008. At that time, reorganized Calpine assumed control of the business, property was transferred, and distributions

commenced under the plan. *See* Decl. of B. Folse ¶¶ 10-20 (Ex. A). The next day, on February 1, 2008, this Court denied the Compania Appellants' stay request and motion to expedite.

## STATEMENT OF FACTS

The following provides an overview of the chapter 11 cases, the Bankruptcy Court's rulings below, and this Court's order denying the request for a stay pending appeal.

### A.    The Disclosure Statement And Solicitation Process

On June 20, 2007, the Debtors filed their plan of reorganization and an accompanying disclosure statement. The plan was a "waterfall" plan under which Calpine's reorganized equity would be distributed to unsecured creditors until they were paid in full, with the balance, if any, cascading to old shareholder interest holders in compliance with the Bankruptcy Code's absolute priority rule. The proposed plan and disclosure statement made clear the value of reorganized Calpine — which would determine whether creditors would be paid in full — would be determined by the Bankruptcy Court. *See* 2007-10-04 Order at 2 [Dkt No. 6192]; *see also* Fourth Am. Discl. Statement, at 177 [Dkt No. 6140].

In the disclosure statement, the Debtors provided their views regarding the value of reorganized Calpine, and emphasized that, depending on the "total enterprise value" determined by the Bankruptcy Court, equity holders might not receive any recovery under the proposed plan. Not surprisingly, the Creditors Committee complained the Debtors' initial total enterprise value was too high, while the Equity Committee complained that it was too low — a point of contention flagged seven different times in the disclosure statement. *See* Fourth Am. Discl. Statement, at 4, 10, 13, 105, 109, 177, 184 [Dkt No. 6140].

The Bankruptcy Court approved the Debtors' disclosure statement on September 26. The following week, on October 5, the Debtors began mailing solicitation materials and soliciting votes to accept or reject the proposed plan. The solicitation materials reiterated that equity

holders were not guaranteed any distribution under the plan, that they had a right to contest the total enterprise value, and that valuation ultimately would be determined by the Bankruptcy Court. The Objecting Shareholders received these materials.

###### B.    Discovery And Litigation Over Valuation

In connection with the approval of the disclosure statement, the Bankruptcy Court issued orders establishing the ground rules for interested parties to engage in discovery and participate in the total enterprise valuation trial and confirmation proceedings. *See* 2007-09-26 Order [Dkt No. 6136]; 2007-10-24 Order [Dkt No. 6422]. These orders set forth a structured, organized process to facilitate discovery focused on valuation and other aspects of confirmation, while protecting sensitive confidential information concerning the Debtors' businesses. Among other things, the orders provided that discovery would close on December 10, established a confirmation objection deadline, and scheduled the confirmation hearing for December 17.

As the Bankruptcy Court recognized, it was vital that the confirmation hearing occur in December because the Debtors' valuable exit financing commitment was scheduled to expire in January 2008. *See* 2008-01-24 Order at 10-11 [Dkt No. 7478]. It was therefore in all stakeholders' interests that the confirmation process remain on track. Because of dramatic and well-documented changes in the capital markets, if the financing commitment expired before the Debtors emerged from chapter 11, forcing the Debtors to shop for a new exit financing package, the Debtors would have faced potentially $800 million in additional interest expense, which could have upended the plan and prolonged the bankruptcy proceedings. *See* Aff. of Morgan P. Suckow ¶ 7 (Ex. A, Debtors' Resp. to Mot. for Recons.) [Dkt No. 6189]; Aff. of Samuel M. Greene ¶ 9 (Ex. A, Debtors' Resp. to Mot. for Limited Stay) [Dkt No. 7456].

Although they did not object to the confirmation schedule when it was entered, the Objecting Shareholders now contend that proceedings were rushed and discovery "severely

limited." Compania Br. 14; Flair Br. 9. In fact, for over ten weeks the parties engaged in extensive discovery, centered primarily around valuation. Thirteen different parties promulgated 441 requests for production of documents. *See* 2008-01-24 Order at 3 [Dkt No. 7478]. As the Bankruptcy Court found, the Debtors produced over 2 million pages of documents, and other respondents produced nearly 157,000 additional pages. *See id.* Five different parties promulgated 105 interrogatories, and three different parties promulgated 157 requests to admit. *See id.* Over 20 depositions were taken. *See id.* Sixteen parties requested and were given access to confirmation discovery. The Debtors, the Creditors Committee, and the Equity Committee prepared eight expert reports, along with six rebuttal reports. *See id.* The discovery process was anything but limited.

All stakeholders, including the appellants, had ample access to the fruits of this discovery. Under the process established in September, any stakeholder could access discovery by contacting the Debtors and agreeing to be bound by a protective order. Indeed, parties were granted access to documents, even if they opted not to participate in the initial rounds of discovery. For example, although counsel for the Indenture Trustee for ULC1 bonds did not seek to participate in the discovery process until November, they were given access to confirmation discovery at their request and attended numerous depositions.

Moreover, even without agreeing to the court-approved protective order, stakeholders had access to non-confidential information that was not filed under seal, including the Debtors' earnings forecasts, income statement forecasts, indirect cash flow forecasts, estimated 12/31/07 balance sheet, and monthly operating reports. *See* Plan, Ex. 12 [Dkt No. 5858]. Stakeholders also were given access to the Debtors' and the Equity Committee's respective valuation report

8

summaries, as well as the Creditors Committee's statement on the Debtors' plan and valuation, and a summary report prepared by the court-appointed expert.

It is undisputed the Objecting Shareholders received adequate notice of the court-ordered discovery and pre-trial schedules, the confirmation objection deadline, and information about the confirmation hearing. It is also undisputed they did not object to the discovery process or the safeguards erected by the Bankruptcy Court to protect confidential business information. The Objecting Shareholders elected not to promulgate any discovery requests, hire any experts, attend any depositions, or participate in any phase of either discovery or the valuation litigation.

On November 1 and 2, the Debtors released updated business plan projections and, on November 19, filed an updated total enterprise valuation analysis, estimating that reorganized Calpine's total enterprise value was $19.35 billion. Based on the $19.35 billion figure and a litigation risk-adjusted claims estimate, the Debtors projected that shareholders would receive no distributions under the plan. *See* Updated Valuation, at 9 [Dkt No. 6642]. At the same time, the Equity Committee and the Creditors Committee each released their own expert valuation reports and, shortly thereafter, publicly released their valuation estimates in statements filed with the Bankruptcy Court. Experts retained by the Creditors Committee estimated the mid-point "distributable value" of reorganized Calpine at $17.78 billion, and projected shareholders would receive no distributions. Experts retained by the Equity Committee estimated a mid-point total distributable value at $25.8 billion, projecting significant distributions to shareholders. *See* 2008-01-24 Order at 3 [Dkt No. 7478].

On November 30, the deadline for objecting to the plan, the Debtors received fifty-one objections raising confirmation-related issues. *See* Status Chart of Resp. to Debtors' Fifth Am. Joint Plan [Dkt No. 7239]. Although they were on notice that they would receive no

distributions under several valuation projections, the Objecting Shareholders filed no objections to the process for determining valuation or the manner in which that process was managed by the Bankruptcy Court.

### C.    The Negotiated Settlement And Confirmation Order

Through the course of discovery, the room for reasonable disagreement over valuation substantially narrowed.   Perhaps most significantly, the Equity Committee's expert reports collapsed under the glare of cross examination.   Its valuation estimates, which were based on a non-standard replacement cost approach and generic cost estimates, were shown to be unreliable and greatly inflated.   *See*   2008-01-15 Hrg. Tr. at 53 (finding the Equity Committee expert's valuation theory "coherently disputed"); Compania Br. 20 (acknowledging that Debtors filed a motion in limine).

The parties negotiated a resolution on December 16, 2007, and agreed to present the Bankruptcy Court with a settlement valuing reorganized Calpine at $18.95 billion.   At that valuation amount, shareholders were entitled to no distributions under the plan.   To provide shareholders with the possibility of some recovery, however, the parties agreed to modify the plan to provide shareholders — including the Objecting Shareholders — with "New Calpine Warrants."   *See* Plan Supp., Ex. 21, Warrant Term Sheet [Dkt No. 7228].   Had the plan not been modified in this fashion, shareholders would have received nothing under the plan.

Although the Bankruptcy Court had scheduled the December 17 confirmation hearing months in advance, the Objecting Shareholders did not attend or monitor the hearing.   If they had, they would have heard the Debtors outline the terms of the proposed settlement in open court.   *See* 2008-12-17 Hrg. Tr. at 8–10.   The Debtors reported the parties had agreed to adjourn the confirmation hearing until December 19, providing time to document the settlement and modify the plan documents.   News of the settlement was immediately "picked up" by Debtwire

("Calpine cuts deal with equity; reduces enterprise value and exit financing by USD 400m"), and Bloomberg ("Calpine, Creditors, Shareholders Agree on Value"), and later that day appeared on the Associated Press wire ("Calpine to reduce bankruptcy exit financing by $400M").

Over the next two days, the Debtors filed a motion seeking approval to make minor plan modifications for the benefit of equity holders, a redlined version of the plan incorporating the terms of the agreed-on settlement, and an amended hearing agenda for the December 19 hearing. As required by Bankruptcy Rule 3019(a), the Debtors served the modification motion on both the Creditors Committee and the Equity Committee, *see* Fed. R. Bankr. P. 3019(a), and by electronic mail, facsimile, and overnight mail on the entire Rule 2002 Service List — that is, on every person who had asked to receive notice in the chapter 11 cases. *See* [Dkt No. 7285]. The Debtors did not serve individual shareholders who had not requested notice because the Debtors did not have their addresses. Under SEC rules governing the duties of securities intermediaries to forward notices, contact information for shareholders is held by the shareholders' nominees, whose addresses the Debtors do not have, because they are stored in the records of securities services organizations such as the Depositary Trust and Clearing Corporation. *See* 17 C.F.R. §§ 240.14b-1(b)(2), 240.14b-2(b)(3). It is clear that had the Objecting Shareholders requested notice, or signed up to receive notice through the Bankruptcy Court's system, they would have received copies of the modification motion.

At the confirmation hearing on December 19, the Bankruptcy Court granted the Debtors' motion to modify the plan, and determined that the total enterprise value of $18.95 billion was appropriate. *See* 2007-12-19 Hrg. Tr. at 56-57. The Bankruptcy Court held that "the construct of the settlement stipulations and the modifications of the plan are not material and do not adversely affect the treatment of claims or interests." 2008-12-19 Hrg. Tr. at 30. In addition, the

Bankruptcy Court overruled remaining unresolved objections to confirmation. A colloquy among counsel and the Bankruptcy Court regarding telephone calls the Equity Committee had received from shareholders prompted the Bankruptcy Court to ask if any shareholder wanted to object to the plan. No one came forward. *See id.* 55-56.

The Bankruptcy Court then entered a final order confirming the plan. *See* 2007-12-19 Confirmation Order [Dkt No. 7256]. The Bankruptcy Court found that "the New Calpine Total Enterprise Value is equal to $18.95 billion." *Id.* ¶ 76. It also found that the settlement resolving the parties' valuation dispute was reasonable, in good faith, and fair and equitable to all interest holders. *See id.* ¶ 64.

### D.    The Objecting Shareholders' Belated Requests To Re-Litigate

The Objecting Shareholders did not appear at, or in any manner participate in, the confirmation hearings. The Compania Appellants retained counsel for the first time on December 24, and then on December 31 — twelve days *after* confirmation — filed a motion for reconsideration and a motion to reopen discovery. *See* 2019 Statement ¶ 2 (Dec. 31, 2008) [Dkt No. 7316]. On December 28, Mr. Felluss also filed a motion for reconsideration. *See* Notice of Appeal [Dkt No. 7322]. The Flair Appellants did not move for reconsideration or seek any other relief before the Bankruptcy Court.

On January 8, at an in-chambers discovery conference, the Bankruptcy Court denied the Compania Appellants' request to reopen discovery and offered to hear argument and rule on their reconsideration motion at that time. The Compania Appellants declined the offer, delaying consideration of their motion until the scheduled hearing, a week later, on January 15.

At the January 15 hearing, in a comprehensive bench ruling, the Bankruptcy Court denied the Compania Appellants' motion to reconsider, and Mr. Felluss's "motion to reargue," which the Court found was "grounded in conjecture." 2008-01-15 Hrg. Tr. at 53. The Bankruptcy

Court held that the Compania Appellants "are sophisticated investors," who "[d]espite the size of their investments, the risk involved, the existence of notice of the Confirmation Hearing and all other applicable deadlines," did not "request electronic notice," did not "closely monitor" the chapter 11 cases, and decided "as a matter of volition" not to "participate in the confirmation process." 2008-01-15 Hrg. Tr. at 50-51.  The Bankruptcy Court also held that, "[h]aving failed to appear and participate in a detailed scheduled discovery and confirmation process and pursue their objections, there is no basis to now reopen the proceedings to allow them to retry the issues they now seek to raise."  *Id.* at 51.  The Bankruptcy Court confirmed its findings that "the Plan Modification Motion did not materially and adversely affect the treatment of Equity Security Holders," because "at no time was Equity guaranteed to receive any distribution on account of their Interests pursuant to the Plan."  *Id*. at 51-52.  The Bankruptcy Court held that the total enterprise value of $18.95 billion was "justified and reasonable" and, under the "terms of [the] Plan," equity holders at that value "would receive no distribution on account of their interests." *Id*.  The settlement, which "granted" equity holders "the right to receive warrants rather than no distribution at all," *improved* their position.  *Id*.

At the January 15 hearing, the Compania Appellants stated they would file a stay "application promptly." 2008-01-15 Hrg. Tr. at 48-54.  Although the Debtors announced on the record that the plan would become effective by month's end, the Compania Appellants waited another three days before filing their notice of appeal and motion for a "limited stay" on January 18, and setting the motion for hearing on January 24.

On January 24, the Bankruptcy Court denied the Compania Appellants' request for a "limited stay."  *See* 2008-01-24 Order at 7 [Dkt No. 7478].  In a written opinion, the Bankruptcy Court noted the Compania Appellants had "made no showing" and "submitted no affidavits,

13

declarations, or other appropriate evidence" supporting their stay request.  *Id.* at 9.  It also found that "any harm" the Compania Appellants "may now face is a result of their own dilatory conduct."  *Id.*  And it held the relief sought by the Compania Appellants would jeopardize the Debtors' favorable exit financing and threaten potentially significant harm on the Debtors and other stakeholders by delaying Calpine's emergence from bankruptcy.  *Id.* at 10-11.

####     E.    This Court's Denial Of The Compania Appellants' Stay Request

On January 25, 2008, the Compania Appellants filed an emergency motion with this Court for an expedited appeal and a "limited stay" pending appeal.  The Flair Appellants moved to join this motion on January 31, 2008.  Although the affidavit submitted by the Compania Appellants recognized the plan would become effective before the end of the month, *see* 2008-02-25 Wolfson Aff. ¶ 4, the appellants did not request expedited briefing or seek an immediate hearing.  The Court scheduled a hearing for February 1, 2007 — one day *after* the plan became effective.  *See* 2008-01-31 Notice of Effective Date [Dkt No. 7551].

On February 1, 2008, after a lengthy oral argument, this Court rejected the stay request, noting it had "been mooted by the closing of the exit financing and the issuance of the common stock as contemplated by the confirmed plan."  2008-02-01 Hrg. Tr. at 65.  The Court held the Compania Appellants had not satisfied the statutory standards for a stay, because their "core due process arguments substantially constitute efforts to attack the results of judicial proceedings of which [they] were aware, in which they could have participated directly but chose not to, and as to which they made the strategic decision to rely on a representative body that ultimately determined to settle rather than litigate the valuation issues it had raised" earlier in the litigation.  *Id.* at 68.  None of the appellants "took advantage of the opportunity to receive automatic notification of court events."  *Id.* at 69.  The Court further held that this "willful distancing" in "high stakes proceedings as to which" they were "given initial notice … and in which the

14

bankruptcy court made" key determinations regarding "enterprise valuation" and the materiality of plan modifications "undermines significantly the possibility" the Compania Appellants could prevail on appeal. *Id.*

### F.    The Plan Of Reorganization Is Substantially Consummated

On January 31, 2008, the Debtors' plan went effective and "[e]ach of the conditions precedent to consummation" set forth in the plan were "satisfied or waived." 2008-01-31 Notice of Effective Date [Dkt No. 7551]. Upon becoming effective, a series of transactions occurred to implement the plan. Immediately, the plan discharged more than $12 billion of debt — held by more than 2,600 creditors — and permanently enjoined those creditors from asserting claims against Calpine; cancelled all the outstanding shares of old common stock; cancelled certificates evidencing Calpine's pre-petition bond debt; and established certain governance procedures for reorganized Calpine, including a new board of directors and a restatement of the company's charters and bylaws. *See* Folse Decl. ¶ 12.

After the plan went effective, Calpine closed on its $7.3 billion exit financing facility, and used $3.88 billion of those funds to pay off its debtor-in-possession financing facility. *See id.* ¶ 13. Calpine also made wire transfers of billions of dollars to satisfy various secured and administrative claims, including: (1) approximately $66 million to the holders of first lien secured debt; (2) approximately $3.9 billion to holders of second lien secured debt; (3) approximately $16 million to holders of other secured claims; (4) approximately $15 million to holders of administrative claims; and (5) approximately $20 million to holders of unsecured convenience class claims. *See id.* ¶ 14. As of March 25, 2008, Calpine had issued approximately 417 million shares (more than 86% of the 485 million shares of new common stock available to Calpine's creditors) to thousands of creditors. *Id.* ¶ 15. Calpine also distributed 9.7 million shares to an escrow account for the benefit of certain holders of unsecured

bonds pending resolution of an intercreditor dispute. *Id.* ¶ 16. And on February 28, 2008, Calpine issued approximately 48.5 million in warrants to purchase shares of new Calpine common stock to holders of old Calpine common stock, including all of the Objecting Shareholders. *Id.* ¶ 18.

On February 7, 2008, shares of new Calpine common stock began "regular way" trading on the New York Stock Exchange under the ticker symbol "CPN." *Id.* ¶ 17. Between February 7 and March 25, myriad members of the investing public — including employees, individuals, and institutional investors — have bought and sold more than 107 million shares of new Calpine common stock. *See id.* In addition, approximately 4 million warrants, which are trading on open markets under the ticker symbol "CPNCW.PK," have exchanged hands. *Id.* ¶ 18.

Moreover, confirmation and implementation of the plan served as a catalyst for completing distributions by Calpine's Canadian subsidiaries, which had filed for relief under the Companies' Creditors Arrangement Act in the Court of Queen's Bench in Calgary, Alberta, Canada. On January 15, 2008, the Canadian Debtors obtained specific approval of certain distributions to creditors that were dependent upon implementation of the confirmed plan. On February 8, 2008 the Canadian Debtors, relying on the fact that those distributions had been made, applied for and obtained an order terminating the Canadian proceedings. *Id.* ¶¶ 27-29.

## STANDARD OF REVIEW

The Objecting Shareholders urge the Court to apply a de novo standard of review because their appeals purportedly turn "on matters of statutory construction" and "the notice requirements sufficient to satisfy due process." Compania Br. 3. In fact, a far more deferential standard is required.

The Bankruptcy Court's factual findings — including its finding that reorganized Calpine was appropriately valued at $18.95 billion — is reviewed for "clear error." *See* Fed. R. Bankr. P.

8013; *In re Flanagan*, 503 F.3d 171, 179 (2d Cir. 2007) ("bankruptcy court's factual findings will be upheld unless clearly erroneous"). Findings of fact are clearly erroneous only if this Court is "left with the definite and firm conviction that a mistake" was committed. *In re Chase*, No. 06 Civ. 13743, 2008 WL 203622, at *2 (S.D.N.Y. Jan. 22, 2008). If the Bankruptcy Court's findings are "plausible in light of the record viewed in its entirety," this Court "may not reverse" even if it "would have weighed the evidence differently." *Gulf Ins. Co. v. Glasbrenner*, 343 B.R. 47, 57 (S.D.N.Y. 2006) (quotations omitted).

Although a Bankruptcy Court's legal determinations are generally reviewed de novo, *see* Fed. R. Bankr. P. 8013, those determinations here are being challenged in the context of a motion for reconsideration under Federal Rule of Civil Procedure 59. The denial of a Rule 59 motion is committed to the sound discretion of the Bankruptcy Court and will not be overturned absent an abuse of discretion. *Devlin v. Transportation Commc'ns Int'l. Union*, 175 F.3d 121, 132 (2d Cir. 1999); *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2007 WL 2994395, at *2 (S.D.N.Y. Oct. 16, 2007).

The Bankruptcy Court's denial of the Compania Appellants' request to reopen discovery "may be reversed only for abuse of discretion." *In re Integrated Res., Inc.*, 147 B.R. 650, 664 (S.D.N.Y. 1992). Its decision not to consider certain analyst reports is reviewed under the same deferential standard. *See In re Croton River Club, Inc.*, 52 F.3d 41, 45 n.2 (2d Cir. 1995) (bankruptcy court "has broad discretion regarding the admissibility of evidence").

## ARGUMENT

**I.    The Consolidated Appeals Are Equitably Moot And Should Be Dismissed.**

The Court should dismiss these consolidated appeals because Calpine's plan of reorganization went effective more than a month ago and has been substantially consummated. There is thus a "strong presumption" that these appeals are moot. The Objecting Shareholders have not and cannot overcome this presumption.

**A.    The Objecting Shareholders Have Failed To Address The Threshold Mootness Question.**

An appeal "must be dismissed" as moot when it is not possible "to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). An appeal also should be dismissed when although "effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) ("*Chateaugay I*"). This pragmatic rule is "grounded in the notion that, with the passage of time … effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *MAC Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002).

The doctrine of "equitable mootness" is "especially pertinent in bankruptcy proceedings, where the ability to achieve finality is essential to the fashioning of effective remedies." *Chateaugay I*, 988 F.2d at 325; *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005) (doctrine applies to "avoid disturbing a reorganization plan once implemented"). Courts in this Circuit have held that if a reorganization plan is substantially consummated, or an unstayed order results in a "comprehensive change in circumstances" while an appeal is pending, the appeal is *presumptively* moot. *Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 889 (S.D.N.Y. 1994) ("strong presumption" that an appeal of an unstayed confirmation order is moot);; *In re*

*Chateaugay Corp.*, 94 F.3d 772, 776 (2d Cir. 1996) ("*Chateaugay III*") ("courts presume that it will be inequitable or impractical to grant relief after substantial consummation of a plan of reorganization"); *In re Adelphia*, 367 B.R. 84, 91 (S.D.N.Y. 2007).

The Objecting Shareholders have acknowledged that, absent a stay, their appeal could be subject to dismissal.  *See* 2008-01-18 Mot. For Limited Stay, at 14 ("the Debtors and the Creditors Committee are likely to argue that any further prosecution of the appeal would be equitably moot") [Dkt No. 7446]; 2008-01-25 Mot. For Limited Stay, at 4, 34 & n.18.  Indeed, this Court noted that it was "largely persuaded that the stay application *has been mooted* by the closing of the exit financing and the issuance of the common stock as contemplated by the confirmed plan."  2008-02-01 Hrg. Tr. at 65 (emphasis added).  Yet the Objecting Shareholders fail even to mention mootness in their opening briefs, let alone refute it, a tactic that courts have firmly rebuked.  *See Mannheim Video, Inc. v. County of Cook*, 884 F.2d 1043, 1047 (7th Cir. 1989) (criticizing "ostrich-like tactic" of ignoring potentially dispositive authorities); *Devine v. American Benefit Corp.*, 27 F. Supp. 2d 669, 675 n.5 (S.D. W.Va. 1998); *Cedar Crest Health Center, Inc. v. Bowen*, 129 F.R.D. 519, 525 (S.D. Ind. 1989).

Instead of addressing this threshold issue, the Objecting Shareholders assert that their "due process rights override the finality of the" Bankruptcy Court's confirmation order. Compania Br. 36.  In their view, even when a sophisticated shareholder "willful[ly] distanc[es]" itself from "high-stakes proceedings," 2008-02-01 Hrg. Tr. at 68, that shareholder's alleged rights trump not only the rights of the many stakeholders who diligently participated in the proceedings, but also the potentially tens of thousands of innocent third parties who relied on the Bankruptcy Court's confirmation order.

That view is unfounded. This Court faced a similar situation in *In re Loral Space & Communications, Ltd.*, 342 B.R. 132 (S.D.N.Y. 2006) (Marrero, J.). There, as here, a group of shareholders appealed a bankruptcy court's confirmation order, seeking to reopen confirmation proceedings, obtain additional discovery, and revalue the debtors' assets. *Id*. at 138-39. Although the appealing shareholders argued the bankruptcy court's orders violated their "due process and equal protection rights," this Court dismissed the appeal as equitably moot. *Id*.. In a telling passage that could have been written with these appeals in mind, the Court held that, because the plan of reorganization had been substantially consummated, it could not grant relief without disturbing the "numerous consummated transactions and further transactions taken in reliance thereon." *Loral*, 342 B.R. at 139, 140. Even though the appealing shareholders put forth "several hypothetical calculations as to what the valuation" of the debtors' assets "should or could have been," and although they argued they needed further discovery to prove their case, this Court held that the appellants' rights had to give way to those of other parties who were entitled to rely on the finality of the Bankruptcy Court's underlying orders. *Id*. at 138-39.

That holding is consistent with Judge Posner's decision in *In re Edwards*, 962 F.2d 641, 645 (7th Cir. 1992), which considered due process challenges to a bankruptcy court order confirming the sale of property allegedly made without adequate notice. Judge Posner recognized that taking "away a person's property … without compensation or even notice is pretty shocking." *Id*. at 645. But he also recognized that because the sale was consummated there were "property rights on both sides of the equation." *Id*. Emphasizing the Bankruptcy Code's "strong policy of finality," the Seventh Circuit denied the appeal notwithstanding the constitutional nature of the claims asserted. *Id*.; *see also In re USA Commercial Mortgage Co.*, Nos. 2:07-CV-00072, *et al.*, 2007 WL 2571947, at *10 (D. Nev. Aug. 29, 2007) (dismissing

20

appeal as equitably moot even though appellants raised serious due process violations); *In re Home Holdings, Inc.*, No. 98-cv-5690, 2001 WL 262750, at *6 (S.D.N.Y. Mar. 16, 2001) (courts apply mootness doctrines notwithstanding alleged jurisdictional defects).

As these authorities underscore, preserving the finality of a bankruptcy court's confirmation order is necessary to safeguard the rights of all interested parties. Invoking due process does not exempt an appeal from the proper application of doctrines of constitutional and equitable mootness.

### B.    The Plan Of Reorganization Is Substantially Consummated.

Calpine's plan of reorganization has been substantially consummated. Under section 1101 of the Bankruptcy Code, a plan is "substantially consummated" upon (i) the transfer of substantially all of the property proposed to be transferred under the plan; (ii) the reorganized debtor's assumption of the debtor's business; and (iii) the commencement of distributions under the plan. *See* 11 U.S.C. § 1101(2).

Like most plans in large-scale reorganizations, Calpine's plan contemplated myriad interrelated transactions affecting the reorganized Debtors, old equity holders, new equity holders, creditors, employees, and other third parties. For example, the plan permitted reorganized Calpine to access a $7.3 billion new credit facility; provided for the issuance of 500 million shares of new Calpine common stock; provided for the issuance of 48.5 million new Calpine warrants, vested assets, property, and claims in the reorganized Debtors free from encumbrances; canceled debt and equity securities and related obligations, permitted the Debtors to assume and reject numerous contracts and leases; and discharged claims and terminated interests. *See* Plan, Art. IV § B.1-B.3, H, I; Art. V §§ A, A.1-A.7, B, C; Art. VIII § A. [Dkt No. 7237]. Pursuant to the plan of reorganization, Calpine selected a new board of Directors, authorized the adoption of a new charter and bylaws, and awarded grants of stock options and

restricted stock to management. All of these contemplated transactions are substantially complete. *See* Folse Decl. ¶¶ 19-20.

After the plan went effective, the reorganized Debtors accessed the new credit facility, utilized billions of dollars to repay their debtor-in-possession financing and other secured debt, and assumed control of business operations. *Id.* ¶ 13-14, 20. Hundreds of millions of new shares were distributed to creditors through financial intermediaries and, more than 107 million shares of new Calpine stock have been traded over the New York Stock Exchange as of March 25. *Id.* ¶¶ 15, 17; *see Metromedia*, 416 F.3d at 144 (plan substantially consummated because reorganized entity issued substantially all of its reorganized stock and cash distributions); *In re Delta*, 374 B.R. 516, 523 (S.D.N.Y. 2007) (settlement substantially consummated because debtor "distributed millions of dollars in freely tradeable stock through financial intermediaries"). Calpine has issued more than 48 million warrants to old shareholders, which also have been publicly traded. *See* Folse Decl. ¶ 18. It also has entered numerous new agreements and court-approved stipulations, paid taxes, and paid millions of dollars to settle various claims and liens. *See In re Enron Corp.*, 326 B.R. 497, 502 (S.D.N.Y. 2005) (plan substantially consummated in part because "myriad … complicated and interrelated transactions have gone forward, including the settlement and dismissal of litigation"). Since consummation, Calpine has spent millions of dollars on various transactions that could only be entered into by a reorganized entity. *See* Folse Decl. ¶¶ 22-23, 26; *Home Holdings*, 2001 WL 262750, at *5 (plan substantially consummated because "many of the transactions provided for in the plan have been implemented and completed").

**C.    The Objecting Shareholders Cannot Overcome The Strong Presumption That Their Appeals Are Moot.**

Because the plan is substantially consummated, there is a "strong presumption that appellants' challenges have been rendered moot." *In re Texaco Inc.*, 92 B.R. 38, 46 (S.D.N.Y. 1988); *In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 652 (S.D.N.Y. 1995) (substantial consummation is a strong indication of mootness). To rebut this presumption, the Objecting Shareholders must demonstrate (i) that the Court can order some form of "effective relief," *and* (ii) that the requested relief will not "affect the re-emergence of the debtor as a revitalized corporate entity," *and* (iii) that the requested relief will not "unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court," *and* (iv) that the parties "adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings," *and* (v) that the appellants diligently sought a stay. *In re Chateaugay Corp.*, 10 F.3d 944, 952-53 (2d Cir. 1993) ("*Chateaugay II*").

To pass this "stringent test," *Home Holdings*, 2001 WL 262750, at *6, the Objecting Shareholders must satisfy each and every one of these five factors. *See Loral*, 346 B.R. at 72; *In re Kenwin Shops, Inc.*, No. 99-10485, 2000 WL 351404, at *2 (S.D.N.Y. Apr. 5, 2000). Here, none of the factors are satisfied; the presumption of mootness is insurmountable.

**1.    The Relief Sought By The Objecting Shareholders Is Infeasible And Not Permitted Under Federal Law.**

The Objecting Shareholders request that the Court order "the issuance and reservation of an additional three hundred million shares," require the parties to re-litigate the value of reorganized Calpine, and, if the re-litigated value is greater than $18.95 billion, distribute additional stock to former shareholders. Compania Br. 44. The Objecting Shareholders thus ask this Court to set aside five of the Bankruptcy Court's orders, reopen the confirmation

proceedings, and require the parties to redo the extensive discovery, expert report review, and contested litigation that occurred from last September through December. In essence, the Objecting Shareholders are asking for a whole new chapter 11 case.

Granting this relief would require this Court to blue pencil dozens of essential plan provisions. *See* Plan, Art. IV [Dkt No. 7237] (provisions for implementation of the plan); *id.*, Art. VII (provisions governing distributions). It also would effectively "unsatisfy" a necessary condition of the debtors' valuable exit financing and require numerous parts of the plan to be reconfigured. *See In re US Airways Group*, 369 F.3d 806, 811 (4th Cir. 2004) (rejecting request for piecemeal modification of a substantially consummated plan); *see* Mot. for Order Auth. Am. to Exit Fin. Facility, Ex. B, Annex C (Dec. 14, 2007) [Dkt. No. 7116] (as a condition of closing, confirmation order must be "in full force and effect" and "shall not have been stayed …, amended, or modified"). And it would have potentially serious consequences for Calpine's Canadian subsidiaries, which have made distributions predicated on the value of reorganized Calpine's equity having a particular value. *See* Folse Decl. ¶¶ 28-29.

Such modifications and reconfigurations are not permitted. Section 1127(b) of the Bankruptcy Code provides that no modifications may be made to a plan after "substantial consummation," and that only a plan proponent may seek modifications after confirmation. 11 U.S.C. § 1127(b). As the Bankruptcy Court found, the Objecting Shareholders are not plan proponents under 11 U.S.C. § 1127(b). *See* 2008-01-24 Order at 12-13 [Dkt No. 7478] (because "the Objecting Shareholders were not [Plan] proponents," they are "not authorized under Section 1127(b) … to modify the confirmed Plan"); *see also In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 378 (Bankr. E.D. Pa. 1988) ("creditors are precluded from seeking a plan modification"); *In re Horne*, 99 B.R. 132, 134 (Bankr. M.D. Ga. 1989).

Moreover, as the Second Circuit has recognized, reviewing courts lack authority to modify the terms of a settlement reflected in a confirmed plan. *In re Adelphia*, No. 06-1738, 2006 WL 3826700, at *1 (2d Cir. Dec. 26, 2006); *Adelphia*, 367 B.R. at 97 (court has no authority to "rewrite the terms of the bargain" reflected in a confirmed plan). A district court judge "should approve or disapprove a proposed [settlement] agreement as it is placed before him and should not take it upon himself to modify its terms." *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986); *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983) (authority to enforce settlement applies to the agreement in its entirety, not to selected parts).

Even if modifications were permitted, they cannot be accomplished here without a wholesale gutting of Calpine's plan of reorganization. *See Ionosphere*, 184 B.R. at 652 (effective relief not available where appellants challenged the plan in its entirety). The plan contains a non-severability provision, which states that none of the terms of the plan can be modified, and that all of the plan's provisions are "nonseverable and mutually dependent." Plan, Art. XII, § L [Dkt No. 7237]; *see Delta*, 374 B.R. at 523 (refusing to "treat a non-severable provision of the Settlement Agreement as dispensable," contrary to "the tradeoff that allowed the parties to settle in the first instance").

In light of the plan's non-severability provision, the only relief this Court can order would be to overturn the Bankruptcy Court's confirmation order and require the parties to start over and negotiate a new plan. But such relief would effectively force Calpine back into bankruptcy and inevitably "disturb the numerous consummated transactions and further transactions taken in reliance" on the consummated plan. *Loral,* 342 B.R. at 139. Billions of dollars of distributions called for under the plan have already occurred, and numerous contracts and leases have been terminated and new agreements executed in reliance on the Bankruptcy

Court's underlying valuation determination.  In such circumstances, courts have repeatedly held that no effective relief can be granted.  *Id.* at 138-39; *Bartel v. Bar Harbor Airways, Inc.*, 196 B.R. 268, 272 (S.D.N.Y. 1996) (court unable to grant effective relief because "asset sales are completed and the proceeds already distributed"); *Adelphia*, 367 B.R. at 96 & n.50 ("far from evident" how effective relief can be granted when a "multi-billion dollar plan of reorganization" includes "a global settlement, and distributions of cash, stock, and interests in a litigation vehicle"); *In re Blumer*, 66 B.R. 109, 113 (9th Cir. BAP 1986), *aff'd*, 826 F.2d 1069 (9th Cir. 1987) ("effective relief is impossible if funds have been disbursed to persons who are not parties to the appeal").

> ### 2.    The Court Cannot Grant Relief Without Imperiling The Debtors' Successful Reorganization And Unraveling Numerous, Intricate, Integrated Transactions.

Even if conducting a new valuation hearing were possible, granting such relief would be inequitable because it would imperil the Debtors' successful reorganization and "unravel intricate transactions so as to knock the props out from under" the plan and "create an unmanageable, uncontrollable situation for the Bankruptcy Court."  *Chateaugay II*, 10 F.3d at 953; *Loral*, 342 B.R. at 139 (reopening proceedings "so that the Bankruptcy Court can revalue the debtors assets and redistribute accordingly … would clearly 'knock the props out from under the authorization for every transaction that has taken place'").

The consummated plan here embodies a carefully negotiated global settlement approved by the Bankruptcy Court.  An incalculable number of interrelated transactions have taken place since confirmation.  Folse Decl. ¶ 22.  As noted above, when the plan became effective, billions of dollars were distributed in cash and stock.  *See id.* ¶¶ 13-15.  More than one hundred million shares of stock have been bought and sold.  And, perhaps most significantly, "[t]housands of creditors have undoubtedly entered into countless transactions with their distributions since the

plan went effective." *Adelphia*, 367 B.R. at 96; *Delta*, 374 B.R. at 524 (appeal equitably moot where, among other things, "the securities distributed" had "likely been traded … and those distributions cannot reasonably be undone"). In addition, Calpine's Canadian subsidiaries have completed distributions to creditors in related proceedings in reliance on the value of Calpine's equity. *See* Folse Decl. ¶¶ 27-29. None of these transactions can "be unraveled, nor would it be equitable to unravel them." *Adelphia*, 367 B.R. at 97.

Because Calpine's common stock is already trading on open public markets, it is hard to fathom how the Bankruptcy Court could even begin to manage the severe disruptions and irreparable harm that would occur to creditors, equity holders, and third party investors if this Court were to require the parties to re-litigate the value of reorganized Calpine. *See Loral*, 342 B.R. at 140; Folse Decl. ¶ 24. When it denied the stay request, this Court acknowledged the Bankruptcy Court's unrefuted finding that "the issuance of an additional 300 million shares would dilute the share value of the common [stock] issued under the plan by $6 a share, or some $3 billion in market value, and that there would be similar injury to non-objecting shareholders who do not object to the issuance of the warrants in that the warrants would suffer a similar drop." 2008-02-01 Hrg. Tr. at 71; Folse Decl. ¶ 25. The Objecting Shareholders do not even challenge this finding, let alone refute it, or offer any explanation how this irreparable harm might be avoided.

Equally significant, the Objecting Shareholders have not explained how the Bankruptcy Court could avoid the certain chaos that would ensue if the value of reorganized Calpine were changed. *See* Compania Br. 5 (admitting that "[t]he key issue relating to the … plan of reorganization was the value of the reorganized Debtors"). Even if Calpine were ultimately valued at more than $18.95 billion, as the Objecting Shareholders contend, the Bankruptcy Court

could not distribute additional stock to former shareholders without first recalling the warrants received by former shareholders. Because approximately 4 million warrants have been traded to parties over which this Court may have no jurisdiction, such relief is wholly impracticable. *See* Folse Decl. ¶ 18, 24. Moreover, although the Objecting Shareholders speculate they might prove a value greater than $18.95 billion, it is also possible the Bankruptcy Court would value reorganized Calpine at a lower figure, adopting the Creditors Committee's pre-settlement position. If that occurred, not only would former shareholders be out of the money, but certain classes of subordinated creditors also would be entitled to smaller (or no) recoveries. It would be impracticable to order the return of warrants and stocks already distributed and, in many instances, traded to third party investors. *See Kenwin*, 2000 WL 351404, at *2 (refusing to revise plan where "property transfers ... could be undone" and value of company "substantially dissipated").

Nor could the Court grant relief without fundamentally changing the "bargain struck" between the debtors and interested stakeholders on which the consummated plan is premised. *See Metromedia*, 416 F.3d at 145 (appeal moot because "none of the completed transactions can be undone without violence to the overall arrangements"); *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1049 (7th Cir. 1993) (refusing to nullify non-debtor releases because it "would amount to imposing a different plan of reorganization on the parties"). Under the terms of the consummated plan, for example, the debtors and holders of claims and interests mutually discharged and released one another and other parties from claims, interests, liabilities, liens, and other actions arising before the instigation of chapter 11 proceedings. *See* Plan, Art. VIII, §§ A-G, K [Dkt No. 7237]. As the Bankruptcy Court found, these provisions are "an essential means of implementing the Plan," an "integral element of the transactions incorporated" into the plan,

and are "important" to the plan's "overall objectives."  2007-12-19 Confirmation Order ¶ 34 [Dkt No. 7256].  The various releases were premised on the confirmed plan, not on some alternative plan the Objecting Shareholders might prefer.  *See Metromedia*, 416 F.3d at 145 (refusing to void plan releases because "the bargain struck by the debtor and the released parties might have been different without the releases"); *Delta*, 374 B.R. at 524 (because "releases were an integral part of the entire Settlement," appeal could not go forward); *In re Texaco Inc.*, 92 B.R. 38, 45-50 (S.D.N.Y. 1988) (releases were part of an "integrated settlement" and rescission would "undermine the entire reorganization").

In short, granting any relief sought by the Objecting Shareholders would "unravel the entire fabric" of the plan.  *Enron*, 326 B.R. at 503; Folse Decl. ¶ 23.  This extraordinary step would "disrupt the equipoise that produced" the settlement "in the first place" and cast doubt on the legitimacy of the entire reorganization.  *In re East 44th Realty, LLC*, 07-8799, 2008 WL 217103, at *7 (S.D.N.Y. Jan. 23, 2008) (courts should not alter a "painstakingly-negotiated bargain").  And it would be grossly "inequitable to all those who," unlike the Objecting Shareholders, "participated in good faith to bring it to fruition."  *Enron*, 326 B.R. at 503.

### 3.    Adversely Affected Parties Have Not Received Notice Or A Reasonable Opportunity To Participate In These Appeals.

The Objecting Shareholders also have failed to demonstrate that adversely affected parties have received adequate notice of this appeal.  *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 890 (S.D.N.Y. 1994).  Although the appellants have filed "Notices of Appeal," those filings are insufficient to satisfy their obligations.  *See Adelphia*, 367 B.R. at 97-98.  Innocent third parties who were not involved in the reorganization but purchased stock after the plan went effective may have no understanding that these appeals, if successful, could result in diluting the value of their shares.  *See* 2008-02-01 Hrg. Tr. at 4 (noting potential for significant share

dilution).  There is no record evidence "that these parties have been notified" or given "an opportunity to participate in these proceedings."  *Loral*, 342 B.R. at 140.

This Court faced analogous situations in both the *Adelphia* and *Trico* cases.  In both cases, appellants sought relief that would have diluted the value of distributions received under a consummated plan.  And in both cases, the Court held that, because not all of the interested stakeholders were before the Court, the appeal could not go forward.  *See Adelphia*, 367 B.R. at 98; *In re Trico Marine Servs., Inc.*, 337 B.R. 811, 815-16 (Bankr. S.D.N.Y. 2006); *see also In re Revere Copper & Brass, Inc.*, 78 B.R. 17, 22 (S.D.N.Y. 1987) (appeal moot because relief would have a "harmful or prejudicial effect on creditors not party to the appeal" and affect "the activities of the debtor in its reorganized form").  Because unwinding the plans would "retroactively alter" the investing public's "financial assumptions" and potentially diminish the stock value, the Court held it would be "impossible to protect innocent third parties."  *Trico*, 337 B.R. at 815-16; *see also In re Box Bros. Holding Co.*, 194 B.R. 32, 41-42 (D. Del. 1996) (appeal moot though only three creditors altered their position in reliance on the reorganization plan).

So too here.  Because distributions have been made and Calpine's common stock publicly traded, it is impossible for the Court to protect the "investing public," including the "innocent third parties" who purchased Calpine common stock "based on available public information" when the plan went effective.  *Trico*, 337 B.R. at 815.  Relitigating valuation issues would "cause substantial uncertainty" that this Court could not "even begin to predict."  *Id*.

### 4.    The Objecting Shareholders Did Not Diligently Pursue Or Obtain A Stay Pending Appeal.

Finally, the consolidated appeals should be dismissed because the Objecting Shareholders did not diligently pursue all available remedies to obtain a stay.  *See Chateaugay II*, 10 F.3d at 952-53.  As courts have emphasized, "[a]s a practical matter review of a confirmed plan is

possible only if it has been stayed pending appeal." *In re UAL Corp.*, 408 F.3d 847, 850 (7th Cir. 2005). Diligently seeking a stay is therefore "of the utmost importance to an appellant desiring to preserve an appeal of a confirmation order." *Loral*, 342 B.R. at 141.

Neither the Flair Appellants nor Mr. Felluss sought a stay before the Bankruptcy Court. Although the Flair Appellants (but not Mr. Fellus) joined in the Compania Appellants' request for a stay before this Court, the law is settled that a failure to seek relief from the Bankruptcy Court precludes obtaining a stay on appeal. *See* Fed. R. Bankr. P. 8005; *In re Zahn Farm*s, 206 B.R. 643, 644 (2d Cir. BAP 1997) (failure to first seek relief in Bankruptcy Court bars issuance of stay on appeal). Because both the Flair Appellants and Mr. Felluss have failed to pursue all available remedies, they cannot overcome the strong presumption that their appeals are moot. *See Metromedia*, 416 F.3d at 144 (party must "seek a stay even if it may seem highly unlikely" that one will be granted); *Texaco*, 92 B.R. at 46, 51, 54.

Unlike the Flair and Felluss Appellants, the Compania Appellants did seek a stay. But they did not act "with diligence." *See Loral*, 342 B.R. at 141 n.6 (emphasizing that even if appellants sought a stay, their appeal was moot because they did not pursue "all available remedies" with "diligence").

The Bankruptcy Court confirmed the plan on December 19, 2007 — forty-three days *before* the plan went effective on January 31, 2008, leaving the Objecting Shareholders almost a month and half to prosecute their appeal. *Cf. In re DJK Residential*, M-47(GEL) (obtaining an immediate hearing in this Court on March 5, the same day the bankruptcy court denied the stay request); *Adelphia*, 367 B.R. at 88 (obtaining stay within 21 days of confirmation order). But the Compania Appellants did not take the ordinary steps necessary to place their appeal in a posture that would have allowed it to be promptly resolved. Instead, they waited twelve days after

confirmation to file a reconsideration motion; waited weeks before filing their initial stay request in the Bankruptcy Court; and after that request was denied, filed an emergency motion for a stay pending appeal, but did not seek expedited briefing or an immediate hearing. This "[l]ack of diligence, standing alone" is grounds for denying relief. *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985) (lack of diligence may preclude injunctive relief); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *see also In re Revere Copper & Brass Inc.*, 78 B.R. 17 (S.D.N.Y. 1987) (because appellants failed "diligently to pursue the available remedies to obtain a stay" it is "inequitable to hear the merits of their case").

The rule that parties must "diligently" pursue a stay pending appeal is not a formalistic, procedural obligation akin to checking a box; it is a pragmatic requirement intended to encourage the aggressive pursuit of remedies before a plan goes forward to ensure that innocent parties do not suffer. *See Loral*, 342 B.R. at 141 (upsetting "intricate transactions and numerous reliance interests in the absence of an attempt to seek a stay would be inequitable"). As the Seventh Circuit has recognized, "a stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization." *In re UNR Indus., Inc.*, 20 F.3d 766, 769-70 (7th Cir. 1994). Permitting the Compania Appellants to avoid mootness by half-heartedly pursuing a stay "would be grossly inequitable" and subvert the requirement that a party act with all due diligence. *Adelphia*, 367 B.R. at 98-99.

## II. The Objecting Shareholders Have Not Made The Threshold Showing Required To Pursue Their Appeals.

Even if these consolidated appeals were not moot, they should be dismissed because the Objecting Shareholders have failed to make the threshold showing required to pursue their appeals. They have failed to establish standing to challenge many of the Bankruptcy Court rulings to which they object; they have failed to address the Bankruptcy Court's stated reasons

for denying the motions for reconsideration; and they have produced no evidence on which this Court could reasonably rely to grant the relief they seek.

> **A.     The Objecting Shareholders Lack Standing To Appeal Rulings And Orders Not Challenged In The Proceedings Below.**

To have standing to appeal "an appellant must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court." *In re Gucci*, 126 F.3d 380, 388 (2d Cir. 1997).  This test is stricter than Article III's "injury in fact" requirement, *see Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 n.2 (2d Cir. 1988), and "rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *Gucci*, 126 F.3d at 388.

To be an "aggrieved person," a party must appear in the bankruptcy court and object to the orders it seeks to challenge on appeal.  *Matter of Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 690 (7th Cir. 1992) ("[p]rerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy court proceeding"); *Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1335 (9th Cir. 1985); *In re Weston*, 18 F.3d 860, 864 (10th Cir. 1994); *cf. Sandra Cotton, Inc. v. Bank of N.Y.*, 87 B.R. 272, 274 (W.D.N.Y. 1988) (where shareholder failed to intervene before bankruptcy court, he has no standing to appeal the order at issue); *D.A. Elia Constr. Corp. v. Damon and Morey, LLP*, No. 04-CV-975A, 2006 WL 1720361, at *3 (W.D.N.Y. 2006).  As the Second Circuit recognized long ago, "[i]t is too elementary to require the citation of authorities that a person not a party to an action may not appeal from the judgment entered."  *In re Advocate*, 140 F.2d 783, 784 (2d Cir. 1944).

Here, because they did not participate or raise objections in the proceedings below, none of the Objecting Shareholders have standing to challenge the Bankruptcy Court's discovery,

scheduling, and confirmation orders.  The Compania Appellants and Mr. Felluss have standing only to the limited extent they seek review of the Bankruptcy Court's denial of their requests for reconsideration.

### 1.    The Flair Appellants Lack Standing To Participate In These Appeals.

The Flair Appellants have no standing to participate in these appeals.  They did not appear or object to any scheduling, discovery, evidentiary, or other order or ruling at any stage in the bankruptcy proceedings.  Nor did they seek reconsideration in the Bankruptcy Court.  Their first and only act of participation in the proceedings below was filing a notice of appeal.  Accordingly, because the Flair Appellants failed to participate in the proceedings below, and because they have not established standing in their opening brief, their appeal should be dismissed.  *See In re Miner*, 229 B.R. 561, 565 (2d Cir. BAP 1999) (appellants "bear the burden to demonstrate standing"); *Public Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1289 (D.C. Cir. 2007) (appealing party must establish standing in its opening brief).

### 2.    The Objecting Shareholders Have No Standing To Challenge The Bankruptcy Court's Discovery And Scheduling Orders.

The Objecting Shareholders spend pages and pages arguing that discovery was "rushed, selective, and severely limited."  Compania Br. 14-24.  They accuse the Debtors of improperly "cut[ting] off" discovery, *id.* at 22, blame the Bankruptcy Court for mishandling proceedings, *see id.* at 30, and criticize experienced attorneys representing the Equity Committee for purportedly failing to protect their interests.  *See* Compania Br. 15, 20, 22.

The Court should pay no heed to these unfounded accusations because none of the Objecting Shareholders have standing to challenge the Bankruptcy Court's discovery or scheduling orders, attack its decision permitting documents to be filed under seal, or resurrect objections that were initially raised but are no longer being pressed by other parties.  *See* 2007-

12-19 Confirmation Order, § II.B [Dkt No. 7256] (remaining objections to the confirmation order "hereby overruled on the merits"); *see also* 2008-02-01 Hrg. Tr. at 69 (questioning whether Compania Appellants have standing to seek appellate review of "bankruptcy court's determinations with respect to discovery applications and plan objections to which they were not parties").    No Objecting Shareholder challenged or sought timely reconsideration of the Bankruptcy Court's rulings *on any of these* issues and, accordingly, their belated objections to the Bankruptcy Court's litigation and discovery schedule cannot be raised on appeal.  *See Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000) (appellate courts do not consider issues that were not raised at the trial level); *Castleman v. Liquidating Tr.*, No. 6:06-CV-1077, 2007 WL 2492792, at *10 (N.D.N.Y. Aug. 28, 2007) (failure to object in the Bankruptcy Court waives the issue on appeal); *In re Schick*, No. 97 Civ. 9300, 1998 WL 397849, at *7 (S.D.N.Y. July 16, 1998).

### 3.    The Objecting Shareholders Have No Standing To Challenge The Bankruptcy Court's Confirmation Order.

The Objecting Shareholders also have no standing to challenge the Bankruptcy Court's confirmation order.  *See* 2008-01-15 Hrg. Tr. at 51.  Although they argue at length that their due process rights were violated, that they were purportedly denied the right to a full and fair valuation hearing, that the court-appointed expert exceeded its proper role, and that the Bankruptcy Court failed to determine whether the requirements for confirmation were satisfied, *see* Compania Br. 30-39, none of these arguments are properly before this Court.  The Objecting Shareholders did not participate in the confirmation proceedings and did not appear at the confirmation hearing.  *See Troy Savings Bank v. Travelers Motor Inn, Inc.*, 215 B.R. 485, 491 (N.D.N.Y. 1997) ("objections to confirmation may not be raised for the first time on appeal").

The Objecting Shareholders have framed their arguments as if this Court were reviewing the issues on a clean slate. But this Court's authority on appeal is limited to reviewing the Bankruptcy Court's order denying reconsideration — the only order for which the Compania Appellants and Mr. Fellus qualify as "aggrieved" parties with standing to appeal.

### B.    The Objecting Shareholders Have Not Addressed The Critical Findings On Which The Bankruptcy Court Grounded Its Denial Of Reconsideration.

Although the Objecting Shareholders' standing on appeal is limited to challenging the Bankruptcy Court's order denying reconsideration, they have not come close to making the threshold showing required to demonstrate that the Bankruptcy Court abused its discretion. *See Devlin v. Transportation Commc'ns Int'l. Union*, 175 F.3d 121, 132  (2d Cir. 1999) (rulings under Rule 59 reviewed for abuse of discretion).

The standard for granting reconsideration "is strict" and a motion to reconsider is rarely granted "unless the moving party can point to controlling decisions" or factual data overlooked by the court, *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), or demonstrate "the need to correct a clear error or prevent manifest injustice." *Griffin Indus. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000).

On reconsideration, the Compania Appellants and Mr. Felluss did not assert an "intervening change in law" or come forward with "newly-discovered evidence." Accordingly, the burden was (and remains) on them to show that reconsideration was required to correct a clear error or prevent manifest injustice. *See* 2008-01-15 Hrg. Tr. at 50 (holding appellants "failed to establish either alternative criteria" for reconsideration).

The Objecting Shareholders have not satisfied their heavy burden. Most critically, the Objecting Shareholders do not address the Bankruptcy Court's finding that they could have participated in the confirmation and valuation proceedings, but "as a matter of volition" chose not to. 2008-01-15 Hrg. Tr. at 51. That finding is dispositive because the law is clear that "[m]anifest injustice does not exist" when a party "could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *In re King*, No. 05-51441, 2005 WL 4030049, at *5 (Bankr. S.D. Ohio July 15, 2005).

Parties may not use motions for reconsideration to "raise arguments" that "could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *Associated Press v. U.S. Dept. of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (a motion for reconsideration is not "an opportunity for making new arguments that could have been previously advanced"). The failure "to object is not excused by [a] motion to reconsider." *In re Urban Broad. Corp.*, 304 B.R. 263, 271 (E.D. Va. 2004). An interested party may not "sit idly by, not participate in any manner in the formulation and adoption of a plan in reorganization and thereafter … raise a challenge to the plan for the first time" in a motion for reconsideration. *In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1266-67 (10th Cir. 1988).

### C. The Objecting Shareholders Have Not Come Forward With Any Evidence Supporting Their Positions On Appeal.

In the end, the Objecting Shareholders' arguments on appeal rest on their underlying assertion that reorganized Calpine is worth more than $18.95 billion and former equity holders were entitled to a richer payout under the plan. *See* Compania Br. 26. But they have come forward with no credible record evidence — no affidavits, expert reports, or other documentary evidence — supporting this assertion. There is accordingly nothing in the record contradicting

37

the Bankruptcy Court's finding that reorganized Calpine is worth $18.95 billion. *See* 2008-01-19 Confirmation Order ¶ 76 [Dkt No. 7256] ("the New Calpine Total Enterprise Value is equal to $18.95 billion"); *see also* 2008-02-01 Hrg. Tr. at 70 (the Compania Appellants "did not make an evidentiary record below as to their valuation contention and do not proffer one now").

Instead, the Objecting Shareholders' arguments rest largely on hope and conjecture — if litigation were reopened and the Bankruptcy Court required to reconsider its valuation determination, they speculate their newly-retained attorneys (and still unidentified experts) might obtain a more favorable result for equity holders than the result obtained by the experienced attorneys and experts representing the Equity Committee on which the Objecting Shareholders chose to rely. Apart from speculation "as to what the valuation should or could have been," *Loral*, 342 B.R. at 138, the only "evidence" cited by the Objecting Shareholders is the enterprise value initially estimated by the Equity Committee's expert *before* that estimate was tested in the crucible of contested discovery. That estimate was carefully considered by the Bankruptcy Court when it confirmed the plan. *See* 2007-12-19 Hrg. Tr. at 57 ("the court's examination of *all the reports* puts me somewhere in" the "range" of $18.95 billion) (emphasis added). The Bankruptcy Court specifically found that the Equity Committee's expert reports were "coherently disputed by the other experts." 2008-01-15 Hrg. Tr. at 53. It also determined that the Equity Committee's settlement decision was made in "good faith" and the terms of the settlement were a "fair and reasonable compromise" of the "Equity Committee's objections to Confirmation and the disputes regarding the value of the Debtors and provides a fair recovery to Calpine's shareholders." 2007-12-19 Confirmation Order ¶ 64 [Dkt No. 7256]. The Objecting Shareholders provide no reason why the Bankruptcy Court's careful assessment of this evidence

should be second-guessed on appeal. *See Schick*, 1998 WL 397849, at *6 ("[s]peculative and conclusory allegations" are insufficient to resolve factual disputes).

With no evidence supporting their position, the Compania Appellants argue the Bankruptcy Court abused its discretion by failing to consider analyst reports, which even Mr. Felluss characterizes as "speculative industry commentaries … gratuitously attached as exhibits" to the Compania Appellant's reconsideration request. Felluss Br. 9. The Compania Appellants contend that these "speculative" commentaries "may be admissible under the 'market reports, commercial publications' exception to the hearsay rule." Compania Br. 41-42. But this line of argument was never presented to the Bankruptcy Court in the first instance. *See United States v. Pugliese*, 712 F.2d 1574, 1580 (2d Cir. 1983) (hearsay exception cannot be raised for first time on appeal). To the contrary, the Compania Appellants' merely argued that the reports were not hearsay because they were "not being necessarily offered to prove the truth of the matter asserted therein." 2008-01-15 Hrg. Tr. at 14-15 [Dkt No. 7519]. That argument was appropriately rejected by the Bankruptcy Court. *See Croton River*, 52 F.3d at 45 n.2. Moreover, even if admissible under a hearsay exception, if the reports were not offered for the truth, it is unclear why they are relevant.

The Compania Appellants also have made no showing that the analyst reports should have been admitted. Establishing an exception to the hearsay rule is only the first step in admitting questionable evidence; evidence also must be relevant, reliable, and authentic — issues that fall within the trial court's sound discretion. *See* Fed. R. Evid. 402, 403, 802, 901; *Croton River*, 52 F.3d at 45 n.2 (the "bankruptcy court, as a trial court, has broad discretion regarding the admissibility of evidence"). Here, the Bankruptcy Court not only found that the offered reports "were hearsay," but also that "they were rank speculation" and "inappropriate as part of

the motion" because, as Calpine counsel argued, the reports "were generated after [the] December 19" confirmation hearing and, therefore, "improper to use in connection with a motion for reconsideration." 2008-01-15 Hrg. Tr. at 14-15.

In any event, the Compania Appellants have not argued, much less proven, that the Bankruptcy Court's evidentiary ruling was "clearly prejudicial" or that it resulted in "manifest injustice." *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 466 F.3d 97, 101 (2d Cir. 2006) (must show ruling was "clearly prejudicial"); *In re Sharp*, 361 B.R. 559, 565 (10th Cir. 2007) (when a trial court excludes evidence, a reviewing court should "reverse only if the exclusion is an abuse of discretion that results in 'manifest injustice to the parties'"). To make such a showing, the Compania Appellants would not only have to prove that the reports fall within an exception to hearsay, but also that the reports would have changed the Bankruptcy Court's factual finding that reorganized Calpine was worth $18.95 billion. The Compania Appellants have not even attempted to make this affirmative demonstration. Indeed, considering the record evidence as a whole, it is hard to fathom how a few analyst reports that were neither authenticated nor backed-up by expert testimony could outweigh the hundreds of pages of expert reports and rebuttal reports the Bankruptcy Court carefully reviewed and considered.

In short, because the Compania Appellants and Mr. Felluss did not offer any credible evidence below in support of their motions for reconsideration, there is no concrete evidence — as opposed to bare legal argument — on which the Court could rely to overturn the Bankruptcy Court. Without such evidence, the Objecting Shareholders cannot carry their burden and their appeals should be dismissed.

**III.    The Objecting Shareholders' Arguments Fail On Their Merits.**

Even if the appeals were not equitable moot, and even if Objecting Shareholders had standing to challenge the Bankruptcy Court's confirmation order, and even if they had attempted to make the necessary threshold showing to pursue their appeals, the consolidated appeals still should be dismissed. The Objecting Shareholders never bring into focus any arguments that might supply grounds for overturning the Bankruptcy Court.

**A.    The Objecting Shareholders' Due Process Rights Were Not Violated.**

The Objecting Shareholders argue that their due process rights were violated because they purportedly should have been given an opportunity to object to modifications made to the plan. In particular, the Objecting Shareholders contend that they were not given an adequate opportunity to participate in the confirmation process, and that changes made to the plan were material. Both assertions disintegrate on examination.

**1.    The Objecting Shareholders Had A Fair And Adequate Opportunity To Participate In The Confirmation Process.**

The Objecting Shareholders do not deny they could have participated in the confirmation process. They do not deny they received notice that, on September 26, 2007, the Bankruptcy Court approved the Debtors' disclosure statement, established a schedule for litigating the total enterprise value of reorganized Calpine, and gave all interested parties an opportunity to participate. They do not deny they could have attended and participated in the confirmation hearings. They do not deny they could have signed up for immediate electronic notification of all bankruptcy court filings and orders. Nor do they deny they received adequate notice of the disclosure statement, the proposed plan, the court-ordered discovery and pre-trial schedule, the confirmation objection deadline, and the date of the confirmation hearing, or that they could have taken part in discovery.

The Objecting Shareholders instead stake their appeal on the notion they possessed something akin to a constitutional right to have the Equity Committee engage in a contested valuation process on their behalf, and then to redo litigation when the Equity Committee decided to settle on terms the Objecting Shareholders did not like.  *See* Compania Br. 15 ("Appellants had every reason to rely on" the Equity Committee); *id*. at 7, 19 (Appellants "rightfully relied"). But they cite no authority that the Equity Committee owed them such a specific duty or that it was prohibited from agreeing to a reasonable settlement.  *See In re Johns Manville Corp.*, 68 B.R. 155, 161 (S.D.N.Y. 1986) (an "equity committee … cannot guarantee favorable treatment" for equity holders' interests); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992) (members of a committee have a duty "to the class as a whole, not to its individual members").  The selective facts set forth in the Compania Appellants' opening brief confirm that, after hard-fought litigation, the Equity Committee agreed to a settlement that it determined was in the best interests of all equity holders.

The Compania Appellants have no right to "attack the results of judicial proceedings of which [they] were aware, in which they could have participated directly but chose not to, and as to which they made the strategic decision to rely on a representative body that ultimately determined to settle rather than litigate the valuation issues that it had raised in its timely objection to the debtors' plan."  2008-02-01 Hrg. Tr. at 67.  As Judge Swain recognized on February 1, such "willful distancing of a party ... in fast-moving, high-stakes proceedings, as to which the record demonstrates it was given initial notice ... and in which the bankruptcy court made determinations that the parties agreed enterprise valuation was appropriate and that, in light of that valuation, the further plan modifications that were noticed out pursuant to the Rule 3019

procedure were not material," undermines Objecting Shareholders due process arguments. 2008-02-01 Hrg. Tr. at 68.

### 2.    The Minor Plan Modifications Were Not Material.

Even putting aside the Objecting Shareholders' willful failure to participate in the confirmation proceedings, there is no merit to their contentions that changes to the plan were material.

The Objecting Shareholders rely on cases suggesting that plan modifications are material if they result in a dilution in equity ownership.  *See* Compania Br. 35-36.  As noted above, however, there is no evidence on which this Court could rely showing that any dilution in equity ownership occurred.  To the contrary, the Fourth Amended Plan — of which the Objecting Shareholders indisputably received notice — would have resulted in no distributions to equity holders based on a total enterprise value of $18.95 billion.  *See* 2008-01-15 Hrg. Tr. at 52.  In other words, had the plan not been modified and the total enterprise value set at $18.95 billion, the Objecting Shareholders would have received no recovery.  As the Bankruptcy Court found, the modified plan, which granted equity holders the right to receive warrants, was more favorable to equity holders, not less.  *See id.* at 52; *see also In re Concrete Designers, Inc.*, 173 B.R. 354, 356 (Bankr. S.D. Ohio 1994) (changes not material if affected party's position improved).  The Objecting Shareholders have made no showing that this finding was clearly erroneous.

Apart from speculating that reorganized Calpine's enterprise value might be greater than the value determined by the Bankruptcy Court, the Objecting Shareholders complain that the plan's structure was changed because the Bankruptcy Court failed to conduct a "valuation hearing" that supposedly "had been contemplated and widely advertised by all parties." Compania Br. 37.  But the Compania Appellants cannot point to anything in the plan or in the

Bankruptcy Court's orders promising a fully litigated valuation hearing.  The proposed plan and the disclosure statement merely required the Bankruptcy Court to "determine" the value of reorganized Calpine.  *See* Plan, Art. XIII § N [Dkt No. 7237]; Debtors' Fourth Amended Disclosure Statement at 177 [Dkt No. 6140].  Nothing prevented the Bankruptcy Court from approving a settlement and determining the fair value of reorganized Calpine based on its review of the expert reports and assessment that the settlement was fair, reasonable, and in the best interests of all stakeholders.

In the end, the Objecting Shareholders cannot overcome the incontrovertible facts that they were notified of the discovery schedule and valuation process, were well aware that the Bankruptcy Court would ultimately determine the value of reorganized Calpine, and knew that under the Debtors' plan, equity holders were not guaranteed any recovery.  The Bankruptcy Court determined a valuation of $18.95 billion, which would not have entitled equity holders to any distribution under the plan.  The minor modifications made to provide equity holders *more* than what they were otherwise due could not have been material.

### B.    The Bankruptcy Court Did Not Abuse Its Discretion In Retaining A Court-Appointed Expert.

The Objecting Shareholders complain that the Bankruptcy Court "facilitated and promoted a settlement through its own experts."  But this objection is waived and cannot be argued on appeal because it was not raised in the motion for reconsideration.  *See In re McKenna*, 238 F.3d 186, 187 (2d Cir. 2001).  The objection is also baseless because there is nothing improper about appointing an expert to aid the Bankruptcy Court in understanding the complex valuation issues raised in this multi-billion dollar reorganization.  *See In re Armstrong World Indus., Inc.*, 366 B.R. 278, 280-81 (D. Del. 2007) (approving use of fee auditor to scrutinize fee applications in bankruptcy case).  The Objecting Shareholders concede that court-

appointed experts are permitted under Federal Rule of Evidence 706, *see* Compania Br. 37, and that the Second Circuit has expressly approved the practice. *See Scott v. Spanjer Bros., Inc.*, 298 F.2d 928, 930 (2d Cir. 1962) ("cases are recorded as early as the 14th Century … of the summoning of experts by the judges to aid them in the determining of" complex issues); *In re Peterson*, 253 U.S. 300, 312-13 (1920) (Brandeis, J.) (approving Judge Augustus Hand's appointment of an expert auditor to preliminarily investigate claim).

Relying on a ten-year-old Illinois law review article, the Objecting Shareholders nonetheless complain that the Bankruptcy Court's use of an "expert to foster a settlement is immediately questionable because of the likelihood of undue pressure." Compania Br. 38. But these unsavory allegations of "pressure tactics" are unsubstantiated. None of the parties that participated in the confirmation process and settlement negotiations have complained about undue pressure from the court-appointed expert. Nor have the Objecting Shareholders identified any evidence establishing that the court-appointed expert exceeded its proper role.

The Objecting Shareholders instead rely on out-of-context quotations from the confirmation hearing at which "[c]ounsel to the Bankruptcy Court's appointed expert" supposedly "confirmed the presence of pressure tactics and coercive settlement." *Id*. at 38. The transcript contradicts these outlandish accusations. At the confirmation hearing, the Bankruptcy Court noted that all parties responded enthusiastically, without objection, to the idea of utilizing a court-appointed expert. *See* 12-12-17 Hrg. Tr. at 15 [Dkt No. 7431]. As counsel for the court-appointed expert explained, the process was a cooperative enterprise: "despite the broad difference of opinion that existed among the parties when the expert was appointed, the parties in good faith reacted very positively to what the expert tried to get done here and everyone, in the most professional manner possible, worked with us and then ultimately with each other," to

reach a fair and reasonable resolution of the disputed valuation issues. *Id.* at 14. Significantly, numerous parties took the opportunity to confirm the propriety of the process. *Id.* at 14-18. Counsel for the Equity Committee, for example, rose "to confirm the statements" made by others "to reiterate" the Equity Committee's "thanks and appreciation" to the court-appointed expert, whose participation in the process was "of great benefit to all of us." *Id.* at 18.

Accusing a court-appointed expert and, by implication, the Bankruptcy Court of misconduct is a serious matter. In the only case cited by the Objecting Shareholders, the Second Circuit condemned a district court's tactic of sanctioning counsel when they did not settle on terms dictated by the judge. *See Kothe v. Smith*, 771 F.2d 667, 669-70 (2d. Cir. 1985). That is not remotely close to what occurred in this case.

### C. The Bankruptcy Court Examined And Determined All Elements Required Under Section 1129 Of The Bankruptcy Code.

In two paragraphs, the Objecting Shareholders continue their assault on the Bankruptcy Court, complaining that it failed "to determine whether the confirmation requirements in Section 1123 and 1129 of the Bankruptcy Code were satisfied." Compania Br. 39. But these unsupported accusations are also baseless.

The Bankruptcy Court went to great lengths to fulfill its responsibilities under the Bankruptcy Code. Before entering its confirmation order and approving the settlement, it "reviewed the Plan, Disclosure Statement, the Plan Confirmation Brief, the Valuation Brief, the Doody Affidavit, the Greene Affidavit, the Donahue Affidavit, the Castellano Affidavit, the Voting Certification, … the Warrant Term Sheet, the Supplemental Voting Certification, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights." 2007-12-19 Confirmation Order at 3 [Dkt No. 7256]. The Bankruptcy Court also "heard the statements, arguments, and objections made

by counsel in respect of Confirmation" and it "considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation." *Id.*

Far from shirking its responsibility to apply the requirements of section 1123 and 1129, the Bankruptcy Court dedicated sixteen full paragraphs of its confirmation order to explaining why section 1123's requirements were satisfied, *see id.* ¶¶ 20-35, and thirty-nine full paragraphs to addressing the requirements of section 1129, *see id.* ¶¶ 18-56, specifically finding the Debtors had "met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence" and by "clear and convincing evidence." *Id.* at 5. Contrary to the Objecting Shareholders' assertions, the Bankruptcy Court considered section 1129(a)(2)'s solicitation and compliance requirements, *see id.* ¶¶ 36-39, section 1129(a)(3)'s good faith requirements, *see id.* ¶ 40, section 1129(a)(7)'s best interest test, *see id.* ¶ 44; and section 1129(b)'s absolute priority rule. *See id.* at ¶¶ 52-54.

The Objecting Shareholders' conclusory criticisms do not come close to satisfying their heavy burden on appeal to show the Bankruptcy Court abused its discretion or otherwise committed clear error. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal"); *Zhang v. Gonzales*, 426 F.3d 540, 546 n. 7 (2d Cir. 2005); *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir. 1986) (same).

In contrast to the Compania Appellants, Mr. Felluss dedicates a significant portion of his opening brief to arguing that the Bankruptcy Court's analysis failed to satisfy the requirements of section 1129. *See* Felluss Br. 20-23. But even a generous reading of Mr. Felluss' submission below, which was "grounded in conjecture," demonstrates that these arguments are all raised for the first time on appeal. *See* 2008-01-15 Hrg. Tr. at 53; Felluss Mot. to Reconsider [Dkt No.

7322].    Nor does Mr. Felluss identify any legal error made by the Bankruptcy Court in conducting its section 1129 analysis.  Although Mr. Felluss states "there is little doubt that the Plan does not satisfy all the requirements of Section 1129(a)," he provides no legal or factual basis to support this bare contention.

### D.    The Bankruptcy Court Did Not Abuse Its Discretion In Denying Additional Discovery.

Finally, the Objecting Shareholders have not shown that the Bankruptcy Court abused its discretion in denying discovery in conjunction with the motion for reconsideration, or refusing to consider analyst reports posted on the Internet.  *See In re Integrated Res., Inc.*, 147 B.R. 650, 664 (S.D.N.Y. 1992) ("[t]he bankruptcy court's decision not to permit additional discovery may be reversed only for abuse of discretion"); *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992).

The Objecting Shareholders concede that they were required to make a *prima facie* showing that the Bankruptcy Court committed manifest errors of law before being entitled to discovery.  *See* Compania Br. 40-41; *see In re Orlick*, No. 01-civ1606, 2002 WL 432006, at *6 (E.D. Pa. Mar. 19, 2002) (a party has no right to discovery on rehearing).  But they never made this *prima facia* showing and provide no basis on appeal for disturbing the Bankruptcy Court's discretionary decision.

Even the cases cited by Objecting Shareholders provide a firm basis for *upholding* the Bankruptcy Court.  In each case the court *denied* the request for additional discovery.  *See In re Wyatt, Inc.*, 168 B.R. 520, 525 (Bankr. D. Conn. 1994) (denying additional discovery because, even if were it granted, the outcome would not change); *H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119-22 (6th Cir. 1976) (a request "for discovery for the purpose of attacking a final judgment involves considerations not present in pursuing discovery in a pending

48

action," including the "public interest of the judiciary in protecting the finality of judgments");
*U.S. ex rel. Free v. Peters*, 826 F. Supp. 1153, 1155 (N.D. Ill. 1993) (denying discovery); *Matter of Levensaler*, 13 B.R. 140, 143 (Bankr. Conn. 1981); *Goldy v. Beal*, 91 F.R.D. 451, 456 (D.C. Pa. 1981).  These cases, and those of courts in this Circuit, confirm that the Bankruptcy Court properly denied the discovery requests.  It is well within a court's discretion to deny additional discovery where, as here, the motion "is supported only by speculative claims that further discovery will provide the requisite evidence to flesh out deficient claims." *Martin v. O'Conner*, 225 B.R. 283, 286-87 (N.D.N.Y. 1998); *Carney v. U.S. Dept. of Justice*, 19 F.3d 807, 813 (2d Cir. 1994); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir. 1985).

*    *    *    *

Because the Objecting Shareholders seek to explode a complex, multi-billion dollar plan of reorganization for a company servicing an essential sector of the economy, they face a heavy burden to justify their request that the Court turn back time, unwind the consummated plan, and reopen confirmation proceedings.  To have any hope of satisfying this heavy burden, it was incumbent on the Objecting Shareholders to develop concrete record evidence that might support their position on appeal.  It also was incumbent on the Objecting Shareholders in their opening briefs to attend carefully to the proper standards of review, address forthrightly the obvious mootness questions that infect these appeals, and respond directly to the Bankruptcy Court's stated reasons for denying their reconsideration requests, including justifying their dilatory conduct and failure to participate in the proceedings below.

Instead of satisfying these obligations, the Objecting Shareholders' opening briefs are larded with unsupported accusations that turn on speculative assumptions about whether reorganized Calpine might be valued differently if confirmation proceedings were reopened. The arguments presented in the opening briefs do not come close to what should be expected of

49

parties seeking to summon this Court's powers of appellate review to overturn a confirmed plan.

*See Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) ("new arguments may not be made in a reply brief").  Because they have failed to substantiate their arguments, the Objecting Shareholders' appeals should be dismissed.

## CONCLUSION

The Court should dismiss the consolidated appeals and affirm the Bankruptcy Court.


Dated: March 28, 2008                    Respectfully submitted,
      New York, New York


   /s/  Peter Asplund
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted pro hac vice)
David R. Seligman (admitted pro hac vice)
Peter Asplund (PA 0603)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jeffrey S. Powell (admitted pro hac vice)
Ashley C. Parrish (admitted pro hac vice)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for the Debtors-Appellees*
*Calpine Corporation, et al.*